BISHOP *v.* GAUDIO.

1. MOTOR VEHICLES—NEGLIGENCE—DIRECTED VERDICT.
  Automobile driver passing truck-train on brow of hill was free from negligence as matter of law, where he was on right-hand side of highway when struck by truck-train which had overtaken him only because he slowed down to safely pass children walking on pavement at foot of hill, and truck was not under control, due to faulty brakes and being driven at excessive speed.

2. SAME—TRUCK-TRAIN—EXCESSIVE SPEED—FAULTY BRAKES.
  Driver and owners of heavy truck-train were guilty of negligence as matter of law, where it was driven at excessive speed with faulty brakes over brow of hill, down grade, on wet and slippery pavement, out of control, and trailers buckled, injuring child walking on pavement, when brakes were applied in attempt to avoid hitting automobile which had passed it on brow of hill and had slowed down at its foot to safely pass children walking on pavement (1 Comp. Laws 1929, §§ 4700, 4730[b], 4766).

  NORTH, FEAD, and WIEST, JJ., dissenting in part.

Appeal from Superior Court of Grand Rapids; Shaw (Arthur F.), J. Submitted January 15, 1933. (Docket No. 35, Calendar No. 36,914.) Decided May 16, 1933.

Case by Cornelius A. Bishop, as guardian of Gladys Bos, minor, against Harold Gaudio and others for personal injuries of plaintiff's minor ward alleged to be due to the negligence of defendants. Verdict and judgment for plaintiff against defendants Allen. Verdict for defendants Gaudio, Reynolds, and Avery. Plaintiff and defendants Allen appeal. Reversed, judgment ordered for plaintiff against defendants Gaudio, Reynolds, and Avery and for defendants Allen.

*Louis H. Grettenberger,* for plaintiff.

*Dunham & Allaben,* for defendants Gaudio, Reynolds, and Avery.

*Rodgers & Dunn,* for defendants Allen.

FEAD, J. (*dissenting in part*). Plaintiff had judgment against defendants Allen for damages for negligent operation of an automobile by Clarence Allen. The Allens appeal. The jury found the other defendants not guilty. Plaintiff appeals from the judgment for such other defendants.

The accident occurred in the afternoon of November 20, 1931, on U. S. 16, a few miles east of Grand Rapids, in a shallow gully. From the center of the gully to the crest on the east is 550 feet and to the west over 600 feet. The grade to the east is 2.5 per cent. and to the west 2.8 per cent. At the bottom of the gully was a guard rail about 128 feet long, west of which, 7 feet, was a school sign

post. The guard rail on the north side is 3 feet from the pavement. The accident occurred at the west end of the guard rail. Plaintiff, five years old, and several other children were going home from school, walking east, in two groups a few feet apart, one or more on the pavement and the others on the gravel. One was killed and plaintiff and others injured. The weather was not cold but it had been raining and the pavement was slippery.

Defendant Gaudio was driving a truck-train belonging to defendants Reynolds & Avery. The train consisted of a tractor with four-wheel brakes, semi-trailer with two-wheel brakes, and a four-wheel trailer without brakes. The weight of the train was 26,000 lbs. It was 56 feet long. Gaudio had noticed that the train had slewed several times on the trip from Lansing, especially on curves, because the pavement was wet. When the brakes were applied suddenly the rear trailer bumped the semi-trailer and caused it to buckle or ''jackknife.'' When going over 20 miles per hour on a wet pavement Gaudio did not have control of the train. It could not be stopped within about 150 feet at 20 to 25 miles per hour. The tractor had a governor which held the maximum speed to 33 miles per hour.

Defendant Clarence Allen overtook Gaudio about one-half mile east of the gully and followed him at a speed of 30 to 35 miles per hour. As they came to the top of the grade, Allen passed Gaudio at a speed of 35 to 45 miles per hour. Allen saw the children at the bottom and a car approaching from the west about the same distance from the children as he was. He knew he would meet the car at or close to the children. He said all the children were walking on the pavement. He knew that if he passed the truck he would have to slow down, per-

haps stop because of them. He realized that the situation contained more than the ordinary possibility of danger. He passed the train and got back on the right side of the pavement about halfway down the hill. He began at once to reduce speed, running 10 to 15 feet ahead of the truck. He said he reduced gradually until he was running at from 5 to 10 miles when he passed the children. When he came to them, one child in each group was on the edge of the pavement. Directly after he passed the children the truck struck his car from behind at the right side of the rear bumper and he stopped from 80 to 100 feet farther on.

Gaudio said he first noticed Allen when he passed him, and that, after getting back into the right track, Allen gradually reduced speed to 20 miles per hour. Gaudio applied his brakes lightly to permit Allen to pass and kept light application to reduce speed from the rate of about 25 miles, at which he began the descent. He said that when they neared the children, whom he could not see because of Allen's car, Allen reduced his speed, suddenly and without warning, from 20 to 5 miles per hour; that he, Gaudio, applied his brakes quickly, the train buckled, and the semi-trailer struck plaintiff. The buckle was from one and one-half to two feet. Coming down the hill, Gaudio did not have his train under control, as he ran off the pavement with the right wheels and so continued a distance of 68 feet and until he struck plaintiff, although he tried to get back on the pavement. He stopped, in 10 or 15 feet, the truck at the school sign post.

Defendants Allen contend the verdict against them was contrary to the great weight of the evidence. They reach the conclusion by breaking up the conduct of Clarence Allen into separate acts

and treating them as unrelated to each other. For example, they say Clarence passed the truck safely, reduced speed carefully, had his own car under control, and passed the children without injury. They cast upon Gaudio all the duties of a following driver immediately on their car returning to the right track.

A driver passing another cannot excuse himself from the charge of negligence when his car is struck from the rear on the ground that the following driver has the duty to maintain a safe speed and distance behind him, until he has driven far and fast enough to give the other, in the exercise of reasonable care, under the circumstances, an opportunity to adjust himself to the change in traffic so caused. The character of Allen's driving in relation to such opportunity is in issue.

The issue as to negligence is not wholly between Allen and Gaudio, nor is it a matter of their comparative negligence. Both owed a duty to the children. When Allen decided to pass Gaudio he knew he was undertaking something which possessed more than the ordinary possibilities of danger. He knew he would have to keep his car under control, immediately slacken speed to a very low rate after he had passed Gaudio, and, perhaps, stop. He could not ignore the fact that a heavy truck-train going downhill on a slippery pavement cannot be halted in a few feet. He had no legal right to assume that Gaudio had his train under complete control and could or would drive it to conform to any method of driving Allen should find necessary, nor to ignore Gaudio and reduce his speed to five miles per hour within the 300 feet without warning. He reasonably could be held bound to have anticipated possibility of a rear-end collision.

In other words, the situation would not warrant a charge as of law that Allen was not guilty of negligence with respect to any act from the time he started to pass Gaudio merely because he performed such act without injuring Gaudio or himself. It is peculiarly a case where his various acts must be considered in their relation to each other and it was for the jury to determine whether his conduct constituted due care or negligence. If, as the circumstances strongly indicate, Allen reduced his speed, suddenly and without warning when abreast the children, from 20 to 5 miles per hour, his negligence could hardly be doubted. The Allen verdict was not against the great weight of the evidence.

Error is assigned on the charge and failure to charge. The charge has the fundamental error of failing to define the issues, especially as they apply to the separate defendants. The court read plaintiff's request containing several sections of the statute governing operation of motor vehicles and charging generally that a violation of any by either defendant was negligence, and, if a proximate cause, was actionable. Some of the sections applied to both defendants, some to only one, some to neither, and some only in part. The charge did not tie the relevant provisions of the statute to the testimony and present the issues to the jury. It permitted the jury to assume the function of the court to interpret the statutes. It required the jury to sort out the provisions of the law and apply them without instruction as to their proper place in the issues. When statutes are read to the jury, it is the duty of the court to interpret them and explain their relevancy in the light of the testimony. Another substantial error was that claims of negligence as to

Allen and Gaudio were much different, and separate instructions as to each in this respect should have been given to avoid confusion. For the error in the charge the case must be reversed.

Many other claims of error are made, most of them without merit, and only those likely to arise on new trial will be noted. Immediately after the collision Gaudio exclaimed to Allen, in substance, "You should never stop like that." The statement was evidently spontaneous, and admissible as part of the *res gestæ*. *Martin Parry Corp.* v. *Berner,* 259 Mich. 621.

Witnesses were permitted to say that Allen reduced speed "suddenly." The word has a common and established meaning and properly may be used. Whether the precise sense in which the witness employs it should be amplified by direct or cross-examination must necessarily depend upon the issues and be largely within the discretion of the court.

Witnesses were permitted to testify to physical manifestations and disabilities of plaintiff a long time after the accident and without medical testimony connecting the condition with the injury. In view of the award of damages we cannot say the testimony was not prejudicial.

Plaintiff's bladder was ruptured and an operation was necessary. There was medical testimony of a "predisposition" to the formation of calculi by reason of the injury and operation. This testimony is admissible as disclosing a present weakened condition. However, the jury should be instructed that damages could not be allowed for possibilities, but only for such consequences as are reasonably certain. *Brininstool* v. *Railways Co.,* 157 Mich. 172.

Plaintiff claims Gaudio and his employer were guilty of negligence as a matter of law, and, in any event, their acquittal was against the great weight of the evidence.

1 Comp. Laws 1929, § 4730 (b), provides:

"All trailers or semi-trailers hauled by any motor-propelled vehicle must be so attached to such vehicle and to each other, with such forms of coupling devices as will prevent such trailer or semi-trailer from being deflected more than six inches from the path of the towing vehicle's wheels."

The train was operated in violation of this statute. The statute must be read to prevent excessive deflection under such operation as may be reasonably anticipated. Sudden stopping of motor vehicles is an incident of their ordinary operation. Consequently these defendants were guilty of negligence as a matter of law. The negligence was in operation at the time of the injury and was a proximate cause of it, because the undisputed evidence is that the plaintiff was hurt by the semi-trailer deflecting more than the statutory six inches.

It is also legal negligence to drive a combination of motor vehicles over 40 feet in length at a speed exceeding 20 miles per hour. 1 Comp. Laws 1929, §§ 4700, 4766. The great weight of the testimony is that Gaudio was not driving in excess of such speed immediately before the injury. However, the testimony clearly disclosed that he started down a slippery hill at the illegal speed of 25 miles per hour; that he proceeded until immediately before the accident at 20 miles per hour, knowing that he could not control his train at such speed; and also that, as a matter of fact, he did not have his train under control. We think the great weight of the

evidence is that these elements of negligence were operating at the time of the injury.

All defendants stress the matter of proximate cause. The case does not call for fine distinctions and definitions. The conduct of both Allen and Gaudio was so intimately connected with the injury that the question of proximate cause is practically answered by the determination of which was guilty of negligence operating at the time of the collision. If the negligence of both contributed to the collision, both are liable.

Judgment reversed, new trial should be ordered, with costs to defendants Allen against plaintiff and costs to plaintiff against the other defendants.

North and Wiest, JJ., concurred with Fead, J.

Potter, J. It is not shown here that any improper conduct by defendant Allen, the driver of the automobile, caused or contributed to plaintiff's injury. He was on the right-hand side of the highway, on the pavement, with his automobile under control. He passed the children by the side of the road safely. Plaintiff was not injured by his automobile. Because the driver Allen observed more than ordinary care and caution and slowed his automobile down to pass the children, his automobile was struck by the truck-train of defendants Reynolds & Avery, driven by defendant Gaudio. The liability of the Allens is based solely upon the exercise by Clarence E. Allen, the driver of the automobile, of extraordinary care and caution to prevent injuring plaintiff and those with her. On the other hand, the truck-train of defendants Reynolds & Avery, driven by Gaudio, weighing empty over 13 tons, without adequate brakes, was driven over the

brow of the hill, down grade, on a wet and slippery pavement, out of control, and when its brakes were applied the trailers buckled, the outfit ran off the pavement, and, slithering down the hill, hit plaintiff and defendant Glen Allen's automobile driven by his son, Clarence E.  Both plaintiff and defendant Clarence E. Allen were in the exercise of due care and caution.

The judgment entered is reversed, defendants Gaudio and Reynolds & Avery held liable under the undisputed facts, and defendants Allen held not liable under the undisputed facts, and the question of damages re-submitted to a jury.

McDONALD, C. J., and CLARK, SHARPE, and BUTZEL, JJ., concurred with POTTER, J.